DECISION
{¶ 1} Relator, Hiram Stewart, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's application for permanent total disability compensation, and to enter a new order granting said compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator had failed to demonstrate that respondent commission had abused its discretion and that this court should issue the requested writ.
 {¶ 3} Relator filed an objection to the decision of the magistrate essentially rearguing an issue already adequately addressed in that decision. For the reasons stated in the decision of the magistrate, the objection is overruled.
 {¶ 4} Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, the requested writ is denied.
Objection overruled; writ of mandamus denied.
BROWN and WATSON, JJ., concur.
 IN MANDAMUS {¶ 5} Relator, Hiram Stewart, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation, and ordering the commission to find that he is entitled to that compensation.
Findings of Fact:
 {¶ 6} 1. Relator has sustained three work-related injuries and his claims have been allowed as follows:
 {¶ 7} "Claim Number 79-25119 has been previously allowed for: LOW BACK STRAIN."
 {¶ 8} "Claim Number 94-24141 has been previously allowed for: LUMBO-SACRAL SPRAIN and CERVICAL SPRAIN."
 {¶ 9} "Claim Number 95-358781 has been previously allowed for: TEAR OF ANTERIOR CRUCIATE LIGAMENT RIGHT, TEAR LATERAL MENISCUS RIGHT, DEPRESSIVE DISORDER WITH SOMATOFORM COMPONENTS."
 {¶ 10} 2. Relator did not return to work after his 1995 injury.
 {¶ 11} 3. On February 12, 2001, relator filed an application for PTD compensation supported by the December 15, 2000 report of his treating psychologist, Michael Drown, Ph.D., who opined as follows:
 {¶ 12} "Mr. Stewart is age 54. He has only an eighth grade education. Other than construction labor which he clearly cannot do anymore, he has no other marketable skills. Given information from available medical reports as well as the most recent interview and psychometric data, it is within reasonable certainty that his psychiatric disability taking in the whole body is permanent total. In reference to the AMA Guide (Fourth Edition) regarding Mental and Behavioral Disorders, his psychiatric impairment (taking in the whole body) falls within the marked range."
 {¶ 13} 4. Relator was examined by Dr. William Reynolds who issued a report dated June 22, 2001, addressing relator's allowed physical conditions. Dr. Reynolds concluded that relator had a 21 percent whole person impairment and was capable of performing sedentary work.
 {¶ 14} 5. Relator was examined by Michael A. Murphy, Ph.D., who issued a report dated June 22, 2001, addressing relator's allowed psychological condition. Dr. Murphy concluded that relator's psychological condition had reached maximum medical improvement, assessed an 18 percent whole person impairment, and concluded as follows: "Based on the allowed psychological condition the Claimant is capable of performing in his former capacity. He is capable of sustained remunerative employment." Dr. Murphy completed an occupational activity assessment wherein he noted that relator could return to any former position of employment and that he could also perform any sustained remunerative employment.
 {¶ 15} 6. An employability assessment report was prepared by William T. Darling, M.S., CRC. Based upon the medical reports of Drs. Reynolds and Murphy, Mr. Darling indicated that relator could currently perform the following jobs: sorter, stuffer, laminator, and plastic design applier. Following appropriate remedial education of brief skill training, Mr. Darling indicated that relator could perform the following additional jobs: cashier, convenience store clerk, and security guard. Mr. Darling indicated that relator's age of 55 years would not be a barrier to reemployment and that at this age, he should retain the ability to learn new skills and adapt to new environments. Mr. Darling noted that relator had an eighth grade education and had obtained his GED. This level of education was seen as sufficient for entry-level unskilled and semi-skilled employment tasks. With regard to relator's work history of heavy and production work, Mr. Darling indicated that relator would have no skills which would readily transfer to sedentary tasks and that this would be a negative factor. Mr. Darling did indicate that there was nothing in the record to indicate that relator could not benefit from a structured vocational rehabilitation program designed at skill enhancement and re-employment.
 {¶ 16} 7. Relator's application was heard before a staff hearing officer ("SHO") on February 26, 2002, and resulted in an order denying the application. The SHO specifically relied upon the medical reports of Drs. Reynolds and Murphy as well as the employability assessment prepared by Mr. Darling. Based upon the report of Dr. Reynolds, the SHO found that relator was capable of performing sustained remunerative employment of a sedentary nature. Based upon the report of Dr. Murphy, the SHO concluded that, from a psychological standpoint, relator could perform his former position of employment or any other sustained remunerative employment. The commission found that, at 55 years of age, relator should retain the ability to learn new skills and adapt to new environments, that his education should be sufficient for entry-level unskilled and semi-skilled employment tasks and that, although his work history would present him with no transferable skills, Mr. Darling identified several jobs which relator could reasonably be expected to perform immediately that were within the sedentary restrictions of Dr. Reynolds as well as certain additional jobs which would be available following appropriate remedial education or brief skill training. Based upon Dr. Murphy's assessment, the SHO concluded that appropriate remedial education or brief skill training would be possible for relator and noticed that Mr. Darling had also indicated that relator demonstrated certain temperaments which would be an asset to re-employment. (The commission's order can be found at pages 3 through 6 of the record for the court's review.)
 {¶ 17} 8. Relator's request for reconsideration was denied by order of the commission mailed May 4, 2002.
 {¶ 18} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 20} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 21} Relator does not challenge the commission's reliance upon the medical report of Dr. Reynolds for its conclusion that relator was capable of performing work at the sedentary level. However, relator does challenge the commission's reliance upon the report of Dr. Murphy and the commission's conclusion that relator did not have any restrictions upon his ability to work due to his allowed psychological condition. Specifically, relator asserts that Dr. Murphy placed significant limitations on him with regard to his psychological condition which the commission completely overlooked by focusing on Dr. Murphy's ultimate conclusion that relator could perform his former position of employment as well as any other sustained remunerative employment. For the reasons that follow, this magistrate disagrees.
 {¶ 22} Relator is correct in noting that Dr. Murphy indicated that relator appeared to have deficits in concentration and attention, that his short-term memory has been affected, that he has mild to moderate depressed mood and symptoms of anxiety; however, although Dr. Murphy noted these symptoms, he clearly did not place any restrictions upon relator's ability to perform sustained remunerative employment. Although Dr. Murphy noted that relator has these symptoms, he clearly opined that relator was capable, from a psychological standpoint, of not only returning to any of his former positions of employment but performing any other sustained remunerative employment for which relator was otherwise physically capable of performing. Relator asserts that if the commission would have actually considered the recognized psychological condition, the commission would have found that relator was not capable of performing any sustained remunerative employment. Relator contends that the commission failed to consider all of the recognized conditions in his claim. This magistrate disagrees.
 {¶ 23} Again, Dr. Murphy did note that relator suffers from certain symptoms as a result of his allowed psychological condition. However, his report clearly indicates that it is his opinion that relator is capable of performing any of his former positions of employment as well as any other sustained remunerative employment. Dr. Murphy's report is not defective and the commission did not abuse its discretion in relying on it. Furthermore, the commission did not abuse its discretion by failing to consider the allowed psychological condition.
 {¶ 24} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in relying upon the medical report of Dr. Murphy and in denying his application for PTD compensation. As such, this court should deny relator's request for a writ of mandamus.